NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NATALE BOCCHINO, | : | |
| | : | Civil Action No. 07-864 (PGS) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| TRUSTEES OF DISTRICT OF COUNCIL OF IRONWORKERS OF NORTHERN NEW JERSEY | : | |
| Defendants, | : | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. Oral argument was held on March 4, 2008. For the reasons set forth below, Both motions are granted in part and denied in part. Plaintiff is awarded a judgment against defendant in the amount of $3,922.96.

I.

On or about January 18, 2007, Plaintiff Natale Bocchino filed a complaint against the Defendant the Trustees of District Council Ironworkers Funds of Northern New Jersey ("Trustees" or "Fund") in the Superior Court of New Jersey. On February 22, 2007, the Trustees removed this

action to the District Court of New Jersey. Generally, this case revolves around the interpretation of certain provisions of the Pension Plan of the Ironworkers District Council of Northern New Jersey (Pension Plan).

The facts are undisputed. Michael Rosenstock, a pension plan analyst at the Fund, met with Plaintiff Natale Bocchino on April 28, 2006 to discuss Bocchino's pension benefit. At the time, Bocchino was 69 years of age, and had worked as an ironworker for nearly 40 years. Rosenstock estimated that plaintiff's monthly pension would be $2,762.80. Thereafter, Bocchino signed an application for a pension on May 12, 2006. Sometime between the application date and Bocchino's date of retirement (July 1, 2006), Rosenstock learned that he had miscalculated the monthly pension amount. Evidently, Rosenstock's calculations were reviewed by William Kolfenbach of the Fund. In June, 2006, Kolfenbach advised Rosenstock if an ironworker delayed his retirement beyond age 65, then the monthly pension must be increased 1% per month for each month beyond 65; and therefore, Bocchino's pension should be increased 1% for the 49 months Bocchino worked beyond normal retirement (age 65) or 49 percent. Based on same, Rosenstock re-figured Bocchino's monthly pension to be $4,173.50 per month, and advised Bocchino by letter dated June 28, 2006.

In October 2006, the Fund Administrator, Executive Director Peter A. Sclafani, reviewed Bocchino's pension. According to Sclafani, the 1% per month increase for each month beyond normal retirement date is subject to a caveat. That is, it is paid only for months beyond normal retirement age in which Bocchino did not work 40 hours or more as an ironworker in the district. There are sixteen (16) such months. Sclafani wrote to Bocchino on October 20, 2006 explaining his correct retirement benefit is $3,182.76 and that he received an overpayment for four months of $980.74 per month, or a total of $3,922.96. Not only did Sclafani adjust Bocchino's pension

2

downward, he demanded that Bocchino return the overpayment. The Fund concedes that two mistakes were made in the initial calculation. The defendant's brief declares:

> Two (2) mistakes were made in calculating the amount of plaintiff's initial pension. First, the 1% per month was applied to all 49 months and not 16 months. Second, the pension at age 69 of $2,801 was used as the starting point to which the 1% is applied and not the pension at age 65 as required by the Plan.

Acknowledging these mistakes, the Fund determined Bocchino's pension to be an amount equal to the benefit at normal retirement age plus 16% increase as an actuarial increase for months he did not work 40 hours or more plus additional pension credits for the time he worked beyond age 65. More succinctly, the calculation is:

| | |
|---|---:|
| Pension at age 65 (pension credits 24.485) x 100 | $2,448.50 |
| 1% (Pension at age 65 $2,448.50 x 16%) (1% for each of the 16 months he did not work 40 hours per month or more): | 391.76 |
| Value of additional Pension Credits earned of 3.525 between age 65 and 69: | 352.50 |
| | $3,192.76 |

The downward adjustment is not as obvious as Sclafani infers. During employment, ironworkers receive a Summary Plan Description (Summary) of the Pension Plan as opposed to a complete set of plan documents. The Summary provides the ironworkers with "a concise, easy-to-understand explanation of the Plan's important features," but advises that if there is a "conflict between the wording of this [Summary] and the official plan documents, the official documents will govern."

3

The Summary generally sets forth a participant's rights upon retirement, but is silent as to what occurs if retirement is delayed beyond the age of 65. The Summary does not disclose the delayed retirement benefit; but it notes that there are "restrictions on the type of . . . work you may do after you retire and still receive a pension" (Summary at 19). The Summary provides in pertinent part:

> WHAT IF YOU WORK AFTER YOU RETIRE?
>
> There are certain restrictions on the type of (and how much) work you may do after you retire and still receive a pension from the Plan.
>
> * * *
>
> Disqualifying Employment After Normal Retirement Age
>
> If you are receiving a pension (not including a 25-year Service Pension or a Disability Pension) and you are at least age 65, you will be disqualified for a pension if you are employed or self employed for more than 40 hours a month in a job category covered by the collective bargaining agreement.

The Pension Plan documents like most ERISA plan documents are complex. In stark contrast to the Summary, the delayed retirement benefit is fully explained within them. The Pension Plan sets forth that a participant becomes eligible to receive a retirement benefit when he "has fulfilled all of the conditions for entitled to benefits" (Plan §6.5(d)), and within the same section, it discusses what occurs if retirement is delayed beyond the normal retirement age of 65. In such an instance, the monthly benefit is the accrued benefit at age 65 plus an "actuarially increased" amount for months in which benefits are not paid. It states in part;

> If the Annuity Starting Date is after the Participant's Normal Retirement Age, the monthly benefit will be the accrued benefit at Normal Retirement Age, actuarially increased for each complete

>> calendar month between Normal Retirement Age and the Annuity Starting Date for which benefits were not suspended.

To calculate an ironworker's delayed retirement benefit by using the above formula, three factors must be determined. They are (1) the amount of the benefit at age 65; (2) what is meant by actuarial increase; and (3) the number of months between age 65 and the retirement date in which benefits were not suspended. The parties agree that the pension benefit of Bocchino at age 65 was $2,448.50. Hence, it is not at issue. The Pension Plan (§ 6.5(d)(iii-iv)) defines the term "actuarial increase" as 1% per month after the age of 65. It reads:

> (iii) If a Participant first becomes entitled to additional benefits after Normal Retirement Age, whether through additional service or because of a benefit increase, the actuarial increase in those benefits will start from the date they would first have been payable rather than Normal Retirement Age.
>
> (iv) The actuarial increase will be 1% per month for the first 60 months after Normal Retirement Age and 1.5% per month for each month thereafter.

The last factor to be determined is the number of months benefits were not suspended. In section (§ 6.5(9)(a)), the Plan articulates when benefits are suspended. It states they are suspended whenever a participant works 40 hours or more in any given month beyond age 65. The plan dictates:

> (a) "Benefits shall be suspended for any month in which a Participant works 40 hours or more in a job category covered by a Collective Bargaining Agreement within the geographic area covered by the Plan."

In Bocchino's case, there were 16 months in which he did not work 40 or more hours.

There is no evidence that Bocchino's revised retirement benefit was the result of bad faith, neglect or disparate treatment of Bocchino from other ironworkers who delayed retirement.

## II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect

the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

## III.

In this analysis, the Court must initially determine the standard of review.  Ordinarily, a court will review an ERISA benefits decision de novo. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 111 (1989). If, however, the pension plan grants discretionary authority to the plan administrator in determining eligibility benefits covered by ERISA, the denial of such pension benefits is reviewed under an "arbitrary and capricious standard." *Nash v. Mercedes Benz USA*, 489 F.Supp.2d 411, 416 (D.N.J. 2007) (quoting *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 390 (3d Cir.2000). Here sections 6.3 and 6.4(a), of  the Plan, grant broad authority to the trustees and their decision is final. The Plan states:

> 6.3  ACTION OF TRUSTEES
>
> The trustees shall, subject to the requirements of the law, judge the standard of proof required in any case and the application and interpretation of this Plan, and decision of the Trustees shall be final and binding on all parties.
>
> 6.4 RIGHT OF APPEAL
>
> (a)  No employee, participant, beneficiary or other person or entity shall have any right or claim to benefits under the plan, or any right or claim to payment from the plan, except as specified herein. Any dispute as the eligibility, type, amount or duration of benefits or any right or claim to payments from the Plan shall be resolved by the Board of Trustees under and pursuant to the provisions of the plan, and

7

>its decision of the dispute, right or claim shall be the final and binding on all parties thereto, subject only to such judicial review as may be in harmony with federal labor policy.

As such, the Court will review this case to determine whether the Trustees' actions were arbitrary and capricious.

## IV.

According to the Plaintiff, the Fund must continue to pay the amount promised in the June 28, 2006 letter. The Plaintiff makes two good points. First, the Summary is silent about the delayed retirement benefit; and secondly, the subsection within the Summary regarding suspension of benefits only applies to retirees who are receiving a pension and return to work, as opposed to Mr. Bocchino who delayed retirement beyond 65. Hence, there is a material omission which has caused harm to Bocchino. Undoubtedly, the Summary is woefully inadequate with regard to the Delayed Retirement Benefit; however this is insufficient to support Bocchino's claim.

The Summary sets forth, among other things, how pension credits are earned, and the different kinds of retirement benefits (vested, early retirement, etc.), so it would be logical to alert the ironworkers about delayed retirement. Trustees have a fiduciary duty to "communicate accurately with a beneficiary." *Kaliszewski v. Sheet Metal Workers National Pension, Fund, et al.*, 2005 WL 2297309, No. 03-216E (W.D.Pa. 2005) *citing Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). Generally, a plan administrator breaches his fiduciary duty when he misrepresents the terms of a plan or "fails to provide information when it knows that its failure to do so might cause harm" *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir.2001) (quoting *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1264 (3d Cir.1995). This case is different. This case is different from the cited case law because there is no proof of intentional

8

misrepresentation or omission by the Fund with regard to the Delayed Retirement Benefits. As noted above, the Summary has a limited purpose. That is, it is a "concise, easy to understand explanation" of the most important features of the Plan; and it warns that the Plan Documents control if they differ from the Summary. Although it would have been prudent to alert prospective retirees about delayed retirement, there was no intentional or reckless conduct by the Fund. In addition, Mr. Bocchino knew that the Summary was not a substitute for the Pension Plan documents, and that the Pension Plan documents control, so that the outcome here is not unexpected or unfair.

V.

As corollary to the material omission argument, the plaintiff contends that the Fund is equitably estopped from reducing Plaintiff's retirement benefit of $4,173.50. Generally, in order to establish a claim for equitable estoppel, there must have been a material misrepresentation and reasonable detrimental reliance. *See Rosen v. Hotel Restaurant*, 637 F. 2d 592 (3d Cir.) *cert. denied* 454 U.S. 898 (1981). In this case, Plaintiff submitted an application for retirement benefits in May 2006, well before he received the June 2006 letter setting forth the incorrect benefit amount. As such, Plaintiff cannot show that he detrimentally relied on the $4,173.50 when deciding to retire. *Pane v. RCA Corp.*, 868 F. 2d 631, 638 (3d Cir. 1989). Moreover, there is no showing of fraud, or disparate treatment of Bocchino by the Fund. The proof is that there was an honest mistake in calculating the delayed retirement benefit; and the Fund sought to rectify the error. Generally, the Court will not tinker with an action of the trustees of a Pension Plan unless exceptional circumstances exist. *See Burnstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. and Res. Found*, 334 F.3d 365, 374 (3d Cir. 2003). In *Burnstein*, the Court states:

9

> First and foremost, Burstein has alleged no extraordinary circumstances. "We have held that 'extraordinary circumstances' generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997). None has been alleged here. Furthermore, 'we have consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, <u>or an omission in the disclosure documents</u>.' *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) (emphasis added).

Hence, equitable estoppel is not applicable.

VI.

The language of the Pension Plan, as opposed to the Summary, is clear. Under the Plan, an ironworker may retire at age 65 (normal retirement age) and receive a pension at that time, unless retirement is delayed (6.5). In the event there is a delayed retirement, the Plan sets out how the retirement benefit shall be calculated (6.5d). The Plan provides that the monthly benefit will be "the accrued benefit at Normal Retirement Age, actuarially increased for each complete calendar month" between the "Normal Retirement Age and the Annuity Starting Date for which benefits were not suspended." (6.8 d). It further explains what is meant by "actuarially increase." An actuarial increase is an amount equal to 1% per month for the first 60 months after Normal Retirement Age. This actuarial increase is applied to all months for which "benefits were not suspended." (6.5 (d) (I)). The Pension Plan also articulates when benefits are suspended, that is, "benefits shall be suspended for any month in which a Participant works 40 hours or more" (6.9(a)). General contract law requires

that all provisions be read together in order to interpret its meaning. *In re Cendant Corp., Sec., Litig.,* 454 F.3d 235, 246 (3d Cir. 2006) ("Although the specific usually controls the general in contract construction, we are to construe a contract as a whole.").

In reviewing the above provisions and applying them to Mr. Bocchino, the recalculation by Sclafani is correct. The parties agree that there were 16 months where Bocchino did not work more than 40 hours; and hence he is entitled to a 1% increase for each month. This calculation makes sense because Bocchino received additional "pension credits" for the months he worked beyond age 65 in addition to the actuarial increase. Hence, Bocchino is entitled to an amount equal to (a) normal retirement benefits at age 65 plus; (b) 16% due to the actuarial increase; plus (c) additional pension credits earned between ages 65 and 69, or $3,192.76 (see p. 2-3).

## VII.

The plaintiff's's other argument is that the suspension of benefits provision within the Pension Plan documents and the Summary only apply to retirees who are receiving retirement benefits and return to work. In such circumstances, retirement benefits may be suspended. If one looks at the Summary alone, that is a reasonable interpretation; however, the Pension Plan documents are not so narrowly written. The Suspension of Benefits section within the Plan must be read in conjunction with the delayed retirement provisions. *In re Cendant Corp.,* 454 F.3d at 246. The Court must harmonize all the pension plan's provisions in order to determine its intent. In this case, the delayed retirement benefit specifically refers to suspension of benefits when a Participant works 40 hours or more in a covered job category. Plaintiff's interpretation of the Plan and the Summary would require a piecemeal reading of these provisions which does not reflect the intent of the drafters, and is contrary to the case law.

VIII.

The issue which remains is whether Bocchino must reimburse the Fund for overpayment. The Fund does not set forth a legal justification for same. This Court assumes that the Trustees are moving for return of the overpayment based on federal common-law restitution principles, as they are seeking a monetary judgment.[1] At common-law restitution is governed by general equitable principles and is a question for the Court. *Kaliszewski v. Sheet Metal Workers National Pension, Fund, et al.*, 2005 WL 2297309, No. 03-216E (W.D.Pa. 2005); *Verizon Employee Benefits Committee v. Adams*, 2007 WL 4150928, No., 07-cv-476, *5 (W.D.Pa 2007).[2] While this Court recognizes that a fund's negligence in making a mistake in payment does not bar restitution, the Court must consider various equity factors before determining restitution. *Kaliszewski*, 2005 WL 2297309 at 7. Factors pertinent to review include (1) what disposition the beneficiary has made of the overpayment; (2) the overpayment amount; (3) the nature of the trustee's mistake, e.g., negligence; and (4) the time elapsed since the overpayment was made. *Verizon*, 2007 WL 4150928, *5 n. 16. Here, there is no dispute a mistake was made by the Fund. However, the overpayment of approximately $4,000.00 is still a significant sum. While plaintiff did not retire based on this amount, this is not to say that he did not

---

[1] Two factors lead to this assumption. First, while the Trustees in their counter-claim make a request for attorney fees pursuant to ERISA §502(g)(1), 29 U.S.C. §1132(g), their request for a judgment from Plaintiff in the amount overpaid, makes no mention of the ERISA statute. Second, the Trustees are seeking monetary damages, which the Supreme Court has stated is not available, under ERISA's equitable provisions. *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Michaels v. Breedlove*, 2004 WL 2809996, No. 03-4891, *3 (3d Cir. 2004).

[2] As this Court finds that Defendants have not meet their burden on summary judgment in establishing a right to federal common law restitution, it need not address whether there is a federal common-law right to restitution after *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 210 (2002); see *Verizon Employee Benefits Committee v. Adams*, 2007 WL 4150928, No., 07-cv-476, *5 (W.D.Pa 2007).

budget based on this amount once he was advised. Moreover, as discussed above, the Summary is inadequate in explaining to beneficiaries the Delayed Retirement Benefit. The beneficiary here is without fault, and the negligence was entirely upon the Trustees. The equities of the situation side with plaintiff. Restitution is not warranted.

IX.

Each side requested attorneys fees in this matter. Section 502(g)(1) of ERISA provides that "the court in its discretion may award fees". While the statutory provision itself does not dictate that a party must prevail in order to be awarded attorney's fees, courts have interpreted the statute in such a manner. *See McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.*, 33 F.3d 253 (3d Cir.1994) ("[a]ttorneys' fees may be awarded to prevailing parties in actions brought under [ERISA]"); *O'Malley v. Sun Life Assur. Co. of Am.*, No. 04-5540, 2006 U.S. Dist. LEXIS 2770 *31 (D.N.J. Jan. 23, 2006) ("[b]ecause Plaintiff did not prevail on her summary judgment motion, the Court will not consider her request for an award of attorneys' fees.") *See also Martorana v. Bd. of Trustees of Steamfitters Local Union 420 Health, Welfare and Pension Fund*, 404 F.3d 797 (3d Cir.2005) (noting that "ERISA allows for the award of attorney's fees to the prevailing party at the discretion of the court").

Here, the Trustees' request for attorney fees fails for two reasons. First, such an application must be accompanied by a brief and affidavit. Local Civil Rule 54.2. This has not been provided; and there is no reason the rule should be relaxed in this case.

Secondly, the Third Circuit instructs that certain factors should be considered when addressing the issue. They include (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterent effect of an award of attorneys'

13

fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983); *See also Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1011 (3d Cir.1992). In this case, the Fund does not satisfy the criteria. Bocchino acted in good faith, as a retiree he has limited funds, and there is no deterrent effect by imposing fees upon Bocchino. Quite the opposite, Bocchino actually performed a beneficial service on behalf of the fund. His case demonstrates the need for the Fund to amend the Summary to include a provision about delayed retirement. The Fund has a fiduciary responsibility to communicate accurate information to its members, and unless there is a timely amendment to the Summary, it may be in breach of this duty.

s/Peter G. Sheridan  
PETER G. SHERIDAN, U.S.D.J.

April 23, 2008